IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROGER SEGER, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-20-59-STE |
| ) | |
| ANDREW M. SAUL, ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

I.     **PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 10-22). The Appeals Council denied Plaintiff's request for

review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period of disability from January 8, 2016 through December 31, 2016. (TR. 12). At step two, the ALJ determined that Mr. Seger had the following severe impairments: degenerative joint disease of the right shoulder status post multiple surgical repairs, right cubital canal syndrome, and right carpal tunnel syndrome. (TR. 12). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 12).

At step four, the ALJ concluded that Mr. Seger retained the residual functional capacity (RFC) to:

> [L]ift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about 6 hours during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. The claimant can occasionally climb ramps/stairs, balance, and stoop, kneel, crouch, and crawl. The claimant cannot climb ladders, ropes, or scaffolds. The claimant cannot use his right upper extremity. The claimant has no restrictions with his left upper extremity.

(TR. 13).

At the administrative hearing, the ALJ presented these limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that

Plaintiff could perform. (TR. 41-42). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 42-46). The ALJ adopted the VE's testimony and concluded that during the relevant period, Mr. Seger was not disabled at step five based on his ability to perform the identified jobs. (TR. 22).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ISSUES PRESENTED

On appeal, Plaintiff alleges error in the ALJ's consideration of objective evidence and subjective allegations related to Mr. Seger's cervical radiculopathy. (ECF No. 13:1-7).

## V. ERROR IN THE ALJ'S CONSIDERATION OF EVIDENCE RELATED TO CERVICAL RADICULOPATHY

Mr. Seger was involved in a work-related accident on December 18, 2011 when he slipped in the mud and grabbed a trailer with his right arm, causing his right arm to be wrenched behind his body. (TR. 740). The record contains evidence from 2012-2018 documenting Plaintiff's treatment for impairments stemming from the accident involving Plaintiff's right shoulder/arm and cervical spine. (TR. 287-746). The parties agree that the relevant period at issue is January 8, 2016 through December 31, 2016. (ECF Nos. 13:2; 19:2).[1]  The ALJ found a severe impairment related to Mr. Seger's right shoulder and accounted for the same in the RFC which stated that he could not use his right upper extremity. (TR. 12-13). But the ALJ did not find a severe impairment related to Plaintiff's neck—specifically his cervical radiculopathy. *See* TR. 12. Mr. Seger alleges that the ALJ failed to properly evaluate the evidence related to his cervical spine and consider the same when evaluating the RFC.  (ECF No. 13:1-7). The Court agrees.

### A. Medical Evidence Related to Plaintiff's Cervical Radiculopathy

On January 15, 2014, an EMG indicated "an abnormal study of the right upper extremity" with "possible C5 or C6 radiculopathy." (TR. 294). Specifically, Dr. Howard Jarrell stated that the EMG needle of the right deltoid (C5-6/axillary) and right

---

[1] Mr. Seger had filed a prior application for disability benefits which was denied in an unfavorable decision on June 8, 2015. (TR. 30). At the administrative hearing relevant to the instant case, Plaintiff amended his onset date to January 8, 2016. *See* TR. 32.

4

brachioradialis (C5-6 radial) muscles showed "moderately increased spontaneous activity … suggestive of C5 or C6 radiculopathy[.]" (TR. 294-295). January 21, 2014 cervical spine x-rays showed limited extension and mild degenerative changes at C5-6. (TR. 459). From July 10, 2014 through January 7, 2015, Plaintiff complained of neck pain to Dr. Terrell Philips. (TR. 336, 339, 343, 346, 350). Dr. Philips assessed "nonspecific abnormal findings on radiological and other examination of musculoskeletal system." (TR. 337, 340, 344, 347, 351). During a November 25, 2014 examination with Dr. Jimmy Conway, the physician noted a positive "Spurling's test"[2] and stated that he believed Plaintiff's pain was referred from his neck. (TR. 567).

Dr. Gabriel Pitman performed an EMG on Plaintiff on February 24, 2015 EMG. (TR. 515-518). Dr. Pitman noted that Plaintiff had "neck and arm pain problems" and the EMG was definitive for right C7 radiculopathy. (TR. 516). Dr. Pitman noted those findings were unchanged on April 3, 2015. (TR. 520). In reports from Dr. Conway dated May 28, 2015 and July 9, 2015, Plaintiff reported "pain and numbness with lateral rotation of head" and "when he turn[ed] his head to the right it cause[d] him instant pain in his shoulder and cervical spine." (TR. 597, 600).

On October 29, 2015, Dr. M. Stephen Wilson examined Plaintiff and noted:

- Tenderness to palpation in the bilateral paraspinal musculature from C3 through C6;
- Multiple trigger points palpable throughout the cervical spine;

---

[2] The Spurling's test involves the patient bending his neck while pressure is applied to the top of the head. This process causes the cervical foramen to compress and narrow. A positive test reproduces the radicular symptoms experienced by the patient, indicating the presence of cervical radiculopathy.  See  https://www.spine-health.com/conditions/neck-pain/diagnosing-cervical-radiculopathy.

- Cervical range of motion was "restricted in all planes;" and
- Weakness against resistance demonstrated in the cervical flexors and extensors.

(TR. 420).

Ultimately, Dr. Wilson assessed "[a]cute traumatic injury to the cervical spine resulting in anatomical abnormalities consistent with disc bulging at C6/7 and/or C7/T1, with C7 radiculopathy per EMG study" and stated: "The symptoms in [Plaintiff's] neck are exacerbated by activities that require repetitive head movements, prolonged flexion of the neck, overheard work, and lifting." (TR. 419, 420).

Plaintiff underwent physical therapy at Physical Therapy Central from January 8, 2016 to April 13, 2016. (TR. 468-487). Throughout therapy, Plaintiff complained of "nerve damage from being wrenched around C6-C7 and pain on the right side of his neck." (TR. 468 470, 475, 480, 486-487). Mr. Seger attended physical therapy at Cutting Edge Physical Therapy from May 6, 2016 through June 17, 2016. (TR. 489-514). Notations on May 6, 2016 and June 1, 2016 indicate that Plaintiff's "Spurling's test" was positive. (TR. 490, 505).

On February 1, 2016, Dr. Derek West opined that because of the fact that there had been no mention of a neck injury in Plaintiff's medical record, he believed that "there [wa]s zero causation related to cervical radiculopathy noted on the EMG examination." (TR. 726). Dr. West did not specify whether he was referring to the January 15, 2014 EMG or the February 24, 2015 EMG. *See* TR. 726.

6

On July 19, 2016, Dr. Pitman performed another EMG after Plaintiff reported "progressive problems with pain in the neck radiating down the shoulder into the right upper extremity." (TR. 523-526). At this time, Dr. Pitman assessed:

- Right C7 radiculopathy with interval worsening; and
- Interval development of right C6 radiculopathy.

(TR. 524). On August 25, 2016, Dr. Conway stated that Plaintiff needed a neck evaluation as soon as possible because Mr. Seger "has chronic radiculopathy of C6 and C7 [and] his shoulder pain may be primarily radiating from his cervical spine pain." (TR. 641). At that time, Dr. Conway limited Plaintiff to lifting, pushing, and pulling a maximum of 5 pounds. (TR. 642). Dr. Conway echoed these findings in reports dated October 6, 2016 and November 17, 2016. (TR. 644, 645, 647).

On November 3, 2016 Dr. Wilson specifically evaluated Plaintiff in regards to his cervical spine. (TR. 740-746). Dr. Wilson noted that Plaintiff "continue[d] to experience pain in his neck that radiate[d] into his right upper extremity." (TR. 743). Dr. Wilson stated that Plaintiff's neck symptoms were exacerbated by activities that require[d] repetitive head movements, prolonged flexion of the neck, overhead work, and lifting." (TR. 743). Dr. Wilson stated that examination of Plaintiff revealed:

- Tenderness to palpation in the bilateral paraspinal musculature from C3 to C7;
- Multiple trigger points throughout the cervical spine; and
- Cervical range of motion restricted in all planes.

(TR. 744). Ultimately, Dr. Wilson assessed "[a]cute traumatic injury to the cervical spine resulting in anatomical abnormalities consistent with disc bulging at C6/7 and/or C7/T1,

7

with C7 radiculopathy per EMG study" and stated that Mr. Seger should be referred to a certified spine specialist for further evaluation of his cervical spine. (TR. 745, 746).

Dr. Jason Leinen treated Plaintiff from November 16, 2016 through October 10, 2018 for neck and shoulder pain. (TR. 663-721). On November 16, 2016, Dr. Leinen noted that Plaintiff complained of pain into the right sided neck and on examination Plaintiff exhibited "mild pain and stiffness of the neck with lateral flexion and rotation movements[.]" (TR. 663, 664). On January 10, 2017, Dr. Leinen noted Plaintiff's chronic neck and shoulder pain and noted that Plaintiff was continuing to undergo treatment with Dr. Conway who was "trying to differentiate between the neck and the shoulder as to what is the biggest originating area of his pains." (TR. 670). At that time, Dr. Leinen noted "mild to moderate tenderness to palpation about the posterolateral cervical area down into the right upper shoulder/scapular area." (TR. 670). On June 11, 2018, Dr. Leinen authored a "Medical Source Opinion of Residual Functional Capacity" which stated that Plaintiff had the ability to:

- lift and/or carry a maximum of 10 pounds;
- use his right upper extremity for less than two hours during an 8-hour workday;
- use his left upper extremity for six hours during an 8-hour workday;
- grasp, handle, finger and feel with his right hand two-three hours during an 8-hour workday; and
- grasp, handle, finger and feel with his left hand six hours during an 8-hour workday.

(TR. 707).

8

### B. The ALJ's Evaluation of the Cervical Radiculopathy Evidence

Although Plaintiff's alleged disability owed, in part, to a cervical impairment,[3] the ALJ did not deem the impairment severe. (TR. 12). In evaluating the evidence, the ALJ acknowledged:

- the January 15, 2014 EMG and related findings;

- Dr. Philips' assessment of "nonspecific abnormal findings on radiological and other examination of musculoskeletal system;"

- The February 24, 2015 EMG and related findings;

- Dr. West's findings that he believed that "there [wa]s zero causation related to cervical radiculopathy noted on the EMG examination;" and

- The July 19, 2016 EMG and related findings.

(TR. 15, 16, 17).

The ALJ also mentioned Plaintiff's treatment from Dr. Wilson, Physical Therapy Central, Cutting Edge Physical Therapy, Dr. Conway, and Dr. Leinen, but the ALJ omitted any discussion of Plaintiff's cervical impairment in relation thereto. For example, the ALJ mentioned Dr. Wilson's October 29, 2015 and November 3, 2016 examinations, but only reported the physician's finding that Plaintiff was considered "temporarily totally disabled for an undetermined period of time." *See* TR. 16, 17. The ALJ omitted any mention of Dr. Wilson's findings that Plaintiff suffered:

- Tenderness to palpation in the bilateral paraspinal musculature from C3 through C7;

- Multiple trigger points palpable throughout the cervical spine;

---

[3] *See* TR. 14.

- Cervical range of motion was "restricted in all planes;" and

- Weakness against resistance demonstrated in the cervical flexors and extensors.

The ALJ also failed to mention:

- Dr. Wilson's October 29, 2015 assessment of "[a]cute traumatic injury to the cervical spine resulting in anatomical abnormalities consistent with disc bulging at C6/7 and/or C7/T1, with C7 radiculopathy per EMG study" and statement that: "The symptoms in [Plaintiff's] neck are exacerbated by activities that require repetitive head movements, prolonged flexion of the neck, overhead work, and lifting;" and

- Dr. Wilson's November 3, 2016 findings that Plaintiff "continue[d] to experience pain in his neck that radiate[d] into his right upper extremity;" Plaintiff's neck symptoms were exacerbated by activities that require[d] repetitive head movements, prolonged flexion of the neck, overhead work, and lifting;" and Plaintiff had suffered "[a]cute traumatic injury to the cervical spine resulting in anatomical abnormalities consistent with disc bulging at C6/7 and/or C7/T1, with C7 radiculopathy per EMG study."

(TR. 16, 17).

And while the ALJ mentioned Plaintiff's physical therapy, he failed to mention Mr. Seger's complaints of "nerve damage from being wrenched around C6-C7 and pain on the right side of his neck" and the notations of two positive Spurling's tests. (TR. 17).

And although the ALJ discussed some of the records related to Dr. Conway's treatment of Plaintiff, he failed to mention Dr. Conway's:

- November 25, 2014 notation of a positive "Spurling's test" and statement that he believed Plaintiff's pain was referred from his neck;

- discussion of Plaintiff's May and July 2015 complaints regarding "pain and numbness with lateral rotation of [his] head" and that "when [Plaintiff] turn[ed] his head to the right it cause[d] him instant pain in his shoulder and cervical spine;" and

- August, October, and November 2016 findings that: (1) Plaintiff needed a neck evaluation as soon as possible because he "has chronic radiculopathy

> of C6 and C7 [and] his shoulder pain may be primarily radiating from his cervical spine pain" and (2) limitation on Plaintiff to lifting, pushing, and pulling a maximum of 5 pounds. (TR. 642).

(TR. 16-17).

Finally, although the ALJ discussed a portion of records related to Dr. Leinen's treatment, the ALJ did not mention Dr. Leinen's:

- November 16, 2016, notations that Plaintiff complained of pain into the right sided neck and on examination he exhibited "mild pain and stiffness of the neck with lateral flexion and rotation movements;" or

- January 10, 2017, notation of Plaintiff's chronic neck and shoulder pain and assessment of "mild to moderate tenderness to palpation about the posterolateral cervical area down into the right upper shoulder/scapular area."

(TR. 18-19).

### C.   Error in the ALJ's Consideration of Evidence Related to Cervical Radiculopathy

As alleged by Mr. Seger, the ALJ erred in his consideration of evidence related to Plaintiff's cervical impairment/radiculopathy.

"The record must demonstrate that the ALJ considered all of the evidence...." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Though "an ALJ is not required to discuss every piece of evidence," he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1009-10. An ALJ may not pick and choose among uncontroverted evidence, taking only those parts that are favorable to a finding of nondisability but instead must consider all significantly probative evidence in the record. *See Hardman* v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and

choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

The ALJ's decision in this case does not meet these standards. The ALJ specifically stated he would "not defer or give any specific evidentiary weight, including controlling weight to any prior administrative medical finding(s) or medical opinion(s), including those from … medical sources," but that medical opinions and prior administrative findings had been considered. (TR. 20). And the Court is mindful that the relevant period of disability is from January 8, 2016 through December 31, 2016. But even discounting the evidence which fell outside the relevant period,[4] the ALJ omitted discussion of significant, probative evidence related to Plaintiff's cervical impairment during the relevant period.

For example, on August 25, 2016, Dr. Conway stated that Plaintiff needed a neck evaluation as soon as possible because Mr. Seger "has chronic radiculopathy of C6 and C7 [and] his shoulder pain may be primarily radiating from his cervical spine pain." (TR. 641). And at that time, Dr. Conway limited Plaintiff to lifting, pushing, and pulling a maximum of 5 pounds. See TR. 642); see also TR. 644, 645, 647. Likewise, on November 3, 2016, Dr. Wilson found that Plaintiff suffered "[a]cute traumatic injury to the cervical spine resulting in anatomical abnormalities consistent with disc bulging at C6/7 and/or C7/T1, with C7 radiculopathy per EMG study" and "continue[d] to experience pain in his neck that radiate[d] into his right upper extremity." (TR. 743, 745). Dr. Wilson also stated

---

[4] The Court notes that evidence of a limitation is still relevant even when it precedes the onset date. See Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).

that Plaintiff's neck symptoms were exacerbated by activities that require[d] repetitive head movements, prolonged flexion of the neck, overhead work, and lifting. (TR. 743).

Despite evidence during the relevant period regarding Plaintiff's cervical impairment and related functional limitations, the ALJ overlooked this evidence and instead adopted the June 11, 2018 opinion from Dr. Leinen, with a less restrictive limitation on lifting and a more restrictive limitation involving Plaintiff's left arm. *See* TR. 13, 20. This is error. Because the ALJ failed to consider significant, probative evidence during the relevant time period related to Plaintiff's cervical spine, remand is warranted. *See Mando v. Saul*, 2020 WL 34409, at *5-*6 (W.D. Okla. Jan. 2, 2020) (remand based on ALJ's failure to consider evidence consistent with radicular pain).

## VI. PLAINTIFF'S ADDITIONAL ALLEGATION OF ERROR

Mr. Seger also argues that the ALJ erred in failing to consider his subjective allegations related to his cervical impairment. The ALJ need not consider this issue in light of the remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."); *Mando v. Saul*, 2020WL 34409, at *6 (declining to address allegation that the ALJ improperly assessed subjective allegations, because remand was warranted on the issue involving ALJ's review of medical evidence which supported plaintiff's statements).

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on August 20, 2020.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE